**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BERNARD PITTERMAN, et al., | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:14-CV-00967 (JCH) |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS LLC, | : | MAY 11, 2016 |
| Defendant. | : | |

**RULING RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO DEFENDANT'S AFFIRMATIVE DEFENSES (DOC. NO. 77)**

**I.     INTRODUCTION**

This case arises out of events that occurred on July 13, 2011, when M.R.O, an 8-year-old child, died in connection with an automobile accident involving a 2004 Chevrolet Suburban, which is manufactured by the defendant General Motors LLC ("GM").  The plaintiffs in this case are: (1) Bernard Pitterman, as administrator of the Estate of M.R.O.; (2) Bernard Pitterman, as guardian of the Estate of G.O., who is the victim's brother; and, (3) Rose O'Connor, who is the victim's mother (plaintiffs will be referred to, collectively, as "Pitterman").

In response to the initial Complaint (Doc. No. 1) ("Compl."), GM filed an Answer (Doc. No. 8) ("Compl. Answer"), in which it asserted 15 affirmative defenses.  Pitterman subsequently filed a Motion for Summary Judgment with Respect to Defendant's Affirmative Defenses (Doc. No. 77) ("Pls.' Aff. Def. MFSJ"), in which it moved for summary judgment on affirmative defenses 2-10 and 13.  See id. at 1-2.  Shortly thereafter, Pitterman filed an Amended Complaint (Doc. No. 88) ("Am. Compl.").  In response, GM filed another Answer (Doc. No. 91) ("Am. Compl. Answer"), in which it

asserted 12 affirmative defenses.  Pitterman has not updated his Motion for Summary Judgment since GM filed its Amended Complaint Answer.  However, both GM and Pitterman have filed briefs, subsequent to the filing of the Amended Complaint and Amended Complaint Answer, which have addressed Pitterman's Motion for Summary Judgment.

Although the Complaint Answer contains 15 affirmative defenses and the Amended Complaint Answer contains only 12, there is significant overlap in the affirmative defenses asserted in both Answers.  Accordingly, the court can proceed to rule on Pitterman's Motion for Summary Judgment.  To the extent that the number associated with an affirmative defense differs between the two Answers, the court will endeavor to be as clear as possible in this Ruling so as to avoid any confusion going forward.

## II.   FACTUAL BACKGROUND[1]

On July 13, 2011, M.R.O. died in connection with an automobile accident involving a 2004 Chevrolet Suburban.  See Local Rule 56(a)(1) Statement re: Plaintiffs' Motion for Summary Judgment with Respect to Defendant's Affirmative Defenses ¶ 1 (Doc. No. 77-2) ("Pls.' L.R. 56(a)(1) Stmt."); see also Local Rule 56(a)(2) Statement of Material Facts and Disputed Issues of Material Fact ¶ 1 (Doc. No. 99) ("Def.'s L.R. 56(a)(2) Stmt.").  Prior to the accident, Rose O'Connor had parked the subject

---

[1] In connection with a motion for summary judgment, the court relies on the undisputed facts or, if a fact is disputed, the court views the evidence in the light most favorable to the party opposing summary judgment.  Except where noted, the facts are not in dispute.

Suburban in the driveway of the family home. Pls.' L.R. 56(a)(1) Stmt. ¶ 3.[2] Rose

O'Connor was inside the family home when the accident occurred. Id. ¶ 4; see also

Def.'s L.R. 56(a)(2) Stmt. ¶ 4. Rose O'Connor was not operating the vehicle at the time

of the accident. Id. ¶ 5.[3]

## III.    LEGAL STANDARD

On a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once

the moving party has met its burden, in order to defeat the motion the nonmoving party

must "set forth specific facts showing that there is a genuine issue for trial," Anderson,

477 U.S. at 256, and present such evidence as would allow a jury to find in his favor,

see Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record to address questions of fact, the trial court must resolve

all ambiguities and draw all inferences in favor of the party against whom summary

judgment is sought. Graham, 230 F.3d at 38. Summary judgment "is properly granted

only when no rational finder of fact could find in favor of the non-moving party." Carlton

v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons,

---

[2] GM does not dispute that Rose O'Connor parked the Suburban in the driveway prior to the accident, but asserts that she left "the keys in the Suburban's cup holder because she and her husband alternated vehicles." Def.'s L.R. 56(a)(2) Stmt. ¶ 3.

[3] GM states that it denies this assertion. However, in its Local Rule 56(a)(2) Statement, GM does not directly dispute that Rose O'Connor was not operating the vehicle at the time of the accident. See Def.'s L.R. 56(a)(2) Stmt. ¶ 5. Rather, GM "maintains that the injuries and damage alleged by Plaintiffs . . . arises from the 'operation of a motor vehicle,' as Connecticut courts have interpreted that phrase." Id. Because GM does not cite any evidence that would support a denial of Pitterman's assertion that Rose O'Connor was not operating the vehicle at the time of the accident, the court deems this asserted fact to be admitted. See D. Conn. L. Civ. R. 56(a)(3).

applying the proper legal standards, could differ in their responses to the question"
raised, on the basis of the evidence presented, the question must be left to the finder of
fact.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV.   DISCUSSION

### A.   Second Affirmative Defense[4]

Pitterman moves for summary judgment as to the second affirmative defense
asserted by GM in its Complaint Answer.  See Pls.' Aff. Def. MFSJ at 1.  However, GM
has not reasserted in its Amended Complaint Answer what was, in the Complaint
Answer, the second affirmative defense.  Accordingly, the Motion for Summary
Judgment as to the second affirmative defense is terminated as moot.

### B.   Third Affirmative Defense

Pitterman moves for summary judgment as to the third affirmative defense
asserted by GM in its Complaint Answer.  See id.  However, GM has not reasserted in
its Amended Complaint Answer what was, in the Complaint Answer, the third affirmative
defense.  Accordingly, the Motion for Summary Judgment as to the third affirmative
defense is terminated as moot.

### C.   Fourth Affirmative Defense

Plaintiffs M.R.O. and G.O. – but not plaintiff Rose O'Connor – move for summary
judgment as to the fourth affirmative defense asserted by GM in its Complaint Answer.
See Memorandum in Support of Plaintiffs' Motion for Summary Judgment with Respect
to Defendant's Affirmative Defenses at 4 (Doc. No. 77-1) ("Pls.' Mem. in Supp.").  GM
has reasserted this affirmative defense in the Amended Complaint Answer, except in

---

[4] The following headings refer to affirmative defenses as they were numbered in the Complaint Answer.

4

the Amended Complaint Answer it is numbered as the second affirmative defense.[5]  In

this affirmative defense, GM argues that, "Plaintiffs' alleged damage or loss, if any, was

caused or contributed to by the negligence, fault, or other wrongful conduct of [Rose

O'Connor] . . . including but not limited to failing to use the parking brake and failing to

exercise due care for the safety of M.R.O. by allowing her to occupy the subject vehicle

with the key left in the vehicle."  Compl. Answer at 9 ¶ 4; see also Am. Compl. Answer

at 8 ¶ 2.

    Pitterman argues that M.R.O. and G.O. are entitled to summary judgment on this

affirmative defense based on Connecticut's parental immunity doctrine.  See Pls.' Mem.

in Supp. at 4-10.  Specifically, Pitterman argues that, because M.R.O. and G.O. would

not be able to sue their mother, Rose O'Connor, for the injuries they suffered as a result

of the accident, Rose O'Connor cannot be considered a party "whose comparative

responsibility would diminish any award to [her] minor children."  Id. at 7.

    GM does not dispute the general proposition that the parental immunity doctrine

bars a defendant from asserting an affirmative defense that attempts to reduce a

minor's award because of a parent's negligence.  Rather, GM argues that section 52-

572c of the Connecticut General Statutes, which abrogates the parental immunity

doctrine "[i]n all actions for negligence in the operation of a motor vehicle . . . resulting in

personal injury," allows GM to assert this affirmative defense.  See Defendant General

Motors LLC's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment

---

[5] The ninth affirmative defense asserted in the Amended Complaint Answer is repetitive of the second affirmative defense asserted in the Amended Complaint Answer.  Accordingly, the ninth affirmative defense asserted in the Amended Complaint Answer will be terminated as moot.

with Respect to Defendant's Affirmative Defenses at 5 (Doc. No. 100) ("Def.'s Mem. in Opp'n").

    Because only M.R.O. and G.O. are moving for summary judgment as to this affirmative defense, the operative question before the court is whether M.R.O. or G.O. would be able to sue Rose O'Connor in connection with the accident.  If they would not be able to sue her, then she could not be considered a party to their suits for comparative responsibility purposes.  Whether they would be able to sue her turns on whether section 52-572c would apply to the facts of this case.  If that section were to apply, then the parental immunity would be abrogated and M.R.O. and G.O. would be able to sue Rose O'Connor.  If that section were to not apply, then they would not be able to sue her.  Thus, the fundamental question is whether there is any genuine issue of material fact as to whether M.R.O. and G.O. would, based on the undisputed facts of this case, be able to sue Rose O'Connor "for negligence in the operation of a motor vehicle."  C.G.S.A. § 52-572c.

    It is undisputed that Rose O'Connor was not driving the car or inside the car when the accident occurred – she was inside the house.  However, GM argues that, because "M.R.O. was killed due to activity incident to the vehicle's movement, namely Rose O'Connor's act of leaving the keys in the Suburban's cup holder upon parking the vehicle," Def.'s Mem. in Opp'n at 6, Rose could be sued "for negligence in the operation of a motor vehicle."  This argument borders on being frivolous and is unsupported by any of the cases cited by GM.

    GM's argument is premised on language found in <u>Rivera v. Fox</u>, 20 Conn.App. 619 (Conn. App. Ct. 1990), in which the court stated that, "operation of a motor vehicle

occurs when there is a setting in motion of the operative machinery of the vehicle, or there is movement of the vehicle, or there is a circumstance resulting from that movement or an activity incident to the movement of the vehicle from one place to another." Id. at 624.  The Rivera court cited three cases in support of this definition: State v. Swift, 125 Conn. 399 (1939); Stroud v. Bd. of Water Comm'rs of City of Hartford, 90 Conn. 412 (1916); and, Conti v. Rose Hill Poultry Co., 3 Conn.App. 246 (Conn. Ap. Ct. 1985).  GM also cited Davey v. Pepperidge Farms, Inc., 180 Conn. 469 (1980).  However, none of these cases supports defining the phrase "operation of a motor vehicle" as expansively as GM seeks to define it here.

In Rivera, the plaintiff's decedent died after crashing his vehicle into a Department of Transportation ("DOT") vehicle that had been parked partially in the highway shoulder and partially in the left lane while the DOT employee who had driven the car helped clear debris from an earlier accident.  See Rivera, 20 Conn.App. at 620. At the time of the second accident, the DOT vehicle was parked, its engine was running, and its "strobe lights and four way flashers" were on.  Id.  Still, under those circumstances, the court held that the DOT employee who had parked the vehicle was not "operating [the] motor vehicle" at the time of the second accident because: (1) "at the time of the collision the DOT truck was being used as a warning signal," not a car; and, (2) the vehicle "was not parked incident to travel" insofar as the vehicle "was placed on the highway, not because that was a convenient or an ordinarily appropriate place to park, but because its placement would alert drivers to the danger ahead."  Id. at 624.  If the DOT employee was not operating the vehicle when he parked the vehicle on the highway, with the engine running and the lights on, then certainly Rose O'Connor

7

was not operating the Suburban while she was inside her home, hours after she parked the car in her driveway.

In Swift, the government claimed that the defendant, while intoxicated, was found "sitting behind the wheel attempting to start the engine of the car" while a friend was outside the car attempting to push it.  Swift, 125 Conn. at 401.  Although the defendant was not able to start the engine, the court stated that it was still possible that he was "operating a motor vehicle."  Within this context – that of a defendant trying to start the engine to car but failing to – the court approved of a jury charge that stated that, "[a] person operates a motor vehicle within the meaning of this statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle."  Id. at 403.  In the case at bar, it can hardly be said that Rose O'Connor intentionally did any act, or sequence of acts, that would "set in motion the motive power of the vehicle."  Rather, she parked the car, turned off the engine, placed the keys in the cup holder, and went inside her home.

In Stroud, the plaintiff, who had illegally registered his car, sought recovery when another car collided with the plaintiff's car while the plaintiff's car was parked "in a part of the highway opposite the hotel which is commonly used for parking automobiles."  Stroud, 90 Conn. at 412.  The defendant argued that the Motor Vehicles Act of 1911, which barred owners of illegally registered cars from recovering "for any injury to person or property received by reason of the operation of said motor vehicle in or upon the public highways of this state," precluded the plaintiff from recovering.  See id.  The court, in holding that the damage caused to the plaintiff's car was "received by reason of

its operation," stated that, "[t]he word 'operation' cannot be limited . . . to a state of motion controlled by the mechanism of the car.  It is self-evident that an injury may be received after the operator has brought his car to a stop, and may yet be received by reason of its operation. The word 'operation,' therefore, must include such stops as motor vehicles ordinarily make in the course of their operation." Id. Stroud is distinguishable from the case at bar because, when Rose O'Connor parked the Suburban in her driveway and went into her home, the car was not engaged in the type of stop that cars "ordinarily make in the course of their operation."  Rather, the car was stopped as a means of terminating the car's operation as a car, much like the car in Rivera was no longer being operated as a car when it was being used as a warning device.

In Conti, the plaintiff attempted to sue two coworkers for negligence "for their failure to provide adequate braking on their employer's truck, which the plaintiff was driving alone at the time of the accident." Conti, 3 Conn.App. at 246.  The defendants argued that, because neither was an "operator" of the vehicle at the time of the accident, the plaintiff was limited to workers' compensation.  See id. at 247-48.  The court agreed that, even though the defendants had allegedly created a circumstance that contributed to the accident – i.e., they installed inadequate brakes on the vehicle – they were not "operators" of the vehicle.  See id.  Rather than supporting GM's argument, this case undercuts its argument.  Under Conti, Rose O'Connor could not be considered to have operated the vehicle at the time of the accident, even though it is possible that, by leaving the keys in the cup holder, she made it possible for M.R.O. or

G.O. to access the keys and operate the vehicle, which acts ultimately led to the accident in question.

Lastly, in <u>Davey</u>, the plaintiff was injured as a result of moving a hoist attached to a vehicle in a certain way, upon the direction of a coworker.  See <u>Davey</u>, 180 Conn. at 470-71.  Although the court stated that, "operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle," <u>id.</u> at 472 n. 1, the court indicated that operation of the hoist would not constitute operation of a motor vehicle because "[t]here is nothing to suggest that the use of any mechanical or electrical device not an integral part of the motor vehicle being driven can be considered operation of a motor vehicle."  <u>Id.</u>  If operating a hoist that is physically connected to the vehicle cannot be considered operation of a vehicle, or even "a circumstance resulting from the movement of the vehicle," then placing the keys in the cup holder after parking the car can hardly be considered either operation of the vehicle or "a circumstance resulting from the movement of the vehicle."

Based on the foregoing analysis, the court concludes that neither M.R.O. nor G.O. would be able, in connection with the injuries they suffered as a result of the car accident, to sue Rose O'Connor "for negligence in the operation of a motor vehicle," because Rose was not operating the vehicle within the meaning of that statute.  As a result, parental immunity would apply here and would bar M.R.O. and G.O. from suing Rose O'Connor.  Because M.R.O. and G.O. would not be able to sue Rose, she cannot be considered a party to their suits for comparative responsibility purposes.  Accordingly, the Motion for Summary Judgment as to the fourth affirmative defense, insofar as it is asserted on behalf of M.R.O. and G.O., is granted.

D.   <u>Fifth Affirmative Defense</u>

GM has reasserted this affirmative defense in the Amended Complaint Answer,

except in the Amended Complaint Answer it is numbered as the third affirmative

defense.  In this affirmative defense, GM argues that, "[t]he damages allegedly

sustained by plaintiff were solely or partly the proximate result of plaintiffs' and/or

plaintiffs' decedent's negligence and/or comparative responsibility."  Compl. Answer at 9

¶ 5; <u>see also</u> Am. Compl. Answer at 8 ¶ 3.  In response, Pitterman notes that:

> This affirmative defense does not identify which plaintiff should be
> charged with 'negligent' conduct of which other plaintiff.  As
> discussed with respect to the fourth affirmative defense, the alleged
> negligence of the parents cannot, as a matter of law, be imputed to
> the claims of the minor children nor can it reduce any award to the
> minor children.  To the extent this affirmative defense attempts to
> do so, it is not a valid affirmative defense.

Pls.' Mem. in Supp. at 10.  Pitterman does not provide any additional argument in

opposition to this affirmative defense, and GM, in its opposition briefing, does not

directly address this affirmative defense.  Accordingly, the court construes the Motion

for Summary Judgment as to this affirmative defense to be advanced only on behalf of

M.R.O. and G.O., just as the Motion for Summary Judgment as to the fourth affirmative

defense was advanced only on behalf of those plaintiffs.  Further, the court interprets

Pitterman's argument and GM's silence as indication that the parties agree that the fifth

affirmative defense can be analyzed in the same way as the fourth affirmative defense

was.  That said, there is one significant difference between the fourth and fifth

affirmative defenses.  In the fourth affirmative defense, GM asserts that the plaintiffs'

damages were caused by or contributed to by M.R.O. and G.O.'s parents only.  In the

fifth affirmative defense, GM, by arguing that the damages "were solely or partly the

proximate result of plaintiffs' and/or plaintiffs' decedent's negligence and/or comparative responsibility," Compl. Answer at 9 ¶ 5; Am. Compl. Answer at 8 ¶ 3, argues that the damages incurred were caused or contributed to, by both the parents and by M.R.O. The inclusion, by way of example, of M.R.O.'s alleged negligence as a contributory factor is relevant to the present analysis, because while the doctrine of parental immunity bars the reduction of M.R.O. and G.O.'s damages on account of their parents negligence, the doctrine does not apply to bar reduction based on M.R.O.'s potential negligence.

Accordingly, to the extent that the Motion for Summary Judgment is asserted by M.R.O. as to the fifth affirmative defense, it is granted in part and denied in part. The Motion is granted as to the allegedly contributory negligence of Rose O'Connor, but is denied as to M.R.O.'s and G.O.'s allegedly contributory negligence, because her damages can be reduced due to her own negligence and her brother's negligence.

To the extent that the Motion for Summary Judgment is asserted by G.O. as to the fifth affirmative defense, it is granted in part and denied in part. The Motion is granted as to the allegedly contributory negligence of Rose O'Connor, but is denied as to G.O.'s and M.R.O.'s allegedly contributory negligence, because G.O.'s damages can be reduced due to his own negligence and his sister's negligence.

E. <u>Sixth Affirmative Defense</u>

GM has reasserted this affirmative defense in the Amended Complaint Answer, except in the Amended Complaint Answer it is numbered as the fourth affirmative defense. <u>See</u> Compl. Answer at 9 ¶ 6; <u>see also</u> Am. Compl. Answer at 8 ¶ 4. In this affirmative defense, GM argues that the plaintiffs' damages were caused or contributed

to by Rose O'Connor's negligent entrustment of a vehicle.  See id.  Pitterman argues

that this affirmative defense fails for the same reason that the fourth affirmative defense

fails, see Pls.' Mem. in Supp. at 10, and GM does not argue otherwise.

Accordingly, for the same reasons articulated above, see supra § IV.C, to the

extent that the Motion for Summary Judgment is asserted by M.R.O. and G.O. as to the

sixth affirmative, it is granted.

F.   Seventh Affirmative Defense

GM has reasserted this affirmative defense in the Amended Complaint Answer,

except in the Amended Complaint Answer it is numbered as the fifth affirmative

defense.  See Compl. Answer at 10 ¶ 7; see also Am. Compl. Answer at 8 ¶ 5.  In this

affirmative defense, GM argues that, "Plaintiffs' damage or loss, if any, was caused or

contributed to by the negligent or otherwise wrongful acts and omissions of Plaintiff

Rose O'Connor and M.R.O. in the operation of the motor vehicle at issue."  Id.

Pitterman argues that this affirmative defense fails for the same reason that the fourth

and fifth affirmative defense fail, see Pls.' Mem. in Supp. at 10, and GM does not argue

otherwise.  However, like the fifth affirmative defense, in this affirmative defense GM

argues that the plaintiffs' damages were caused, at least in part, both by Rose

O'Connor's negligence and M.R.O.'s negligence.

Accordingly, to the extent that the Motion for Summary Judgment is asserted by

M.R.O. as to the seventh affirmative defense, it is granted in part and denied in part.

The Motion is granted as to the allegedly contributory negligence of Rose O'Connor, but

is denied as to M.R.O.'s allegedly contributory negligence, because her damages can

be reduced due to her own negligence.

To the extent that the Motion for Summary Judgment is asserted by G.O. as to the seventh affirmative defense, it is granted in part and denied in part.  The Motion is granted as to the allegedly contributory negligence of Rose O'Connor, but is denied as to M.R.O.'s allegedly contributory negligence, because G.O.'s damages can be reduced due to his sister's negligence.

G.  Eighth Affirmative Defense

GM has reasserted this affirmative defense in the Amended Complaint Answer, except in the Amended Complaint Answer it is numbered as the sixth affirmative defense.  See Compl. Answer at 10 ¶ 8; see also Am. Compl. Answer at 8 ¶ 6.  In this affirmative defense, GM asserts that, "Plaintiffs' alleged damage or loss was caused or contributed to by the negligence, fault, or other wrongful conduct of other persons, firms, corporations, or entities over whom GM LLC has no control, right of control, and for which GM LLC is not responsible.  Id.  In its briefing, GM clarifies that the "other persons" it refers to in the affirmative defense are Rose and James O'Connor.  See Def.'s Mem. in Opp'n at 7.

Accordingly, for the same reasons articulated above, see supra § IV.C, to the extent that the Motion for Summary Judgment is asserted by M.R.O. and G.O. as to the eighth affirmative defense, it is granted.

H.  Ninth Affirmative Defense

Pitterman moves for summary judgment as to the ninth affirmative defense asserted by GM in its Complaint Answer.  See Pls.' Aff. Def. MFSJ at 1.  However, GM has not reasserted in its Amended Complaint Answer what was, in the Complaint

Answer, the ninth affirmative defense.  Accordingly, the Motion for Summary Judgment as to the ninth affirmative defense is terminated as moot.

I.   Tenth Affirmative Defense

GM has reasserted, in sum and substance, this affirmative defense in the Amended Complaint Answer, except in the Amended Complaint Answer it is numbered as the seventh affirmative defense.  See Compl. Answer at 10 ¶ 10; see also Am. Compl. Answer at 8 ¶ 7.  In its Complaint Answer, GM phrased this affirmative defense as follows: "GM LLC affirmatively alleges that the subject vehicle was designed, manufactured, and assembled in conformity with the then-existing state of the art and all applicable industry standards and governmental regulations."  Compl. Answer at 10 ¶ 10.  In its Amended Complaint Answer, GM phrased this affirmative defense slightly differently: "GM LLC reserves its right to present evidence that the subject vehicle was designed, manufactured, and assembled in conformity with the then-existing state of the art and all applicable industry standards and governmental regulations in order to establish that the subject vehicle was not defective and unreasonably dangerous in any respect."  Am. Compl. Answer at 8 ¶ 7.

Pitterman argues that the court should grant his Motion for Summary Judgment as to this defense because, "[i]n Connecticut, 'state of the art' is not a proper affirmative defense."  Pls.' Mem. in Supp. at 12.  In response, GM concedes that, while "state of the art" is not an affirmative defense that would completely absolve GM of liability, "GM LLC raises the fact that the O'Connor's Suburban conformed to the then-existing state of the art merely to emphasize its right to present state of the art evidence on the issue of

whether the vehicle was defectively designed, as Plaintiffs have alleged."  Def.'s Mem. in Opp'n at 8.

In connection with the "state of the art" defense, the Connecticut Supreme Court has stated that,

> In our view, state-of-the-art evidence is relevant to the determination of whether a particular product design is unreasonably dangerous. We disagree with the defendants' contention, however, that proof of compliance with the state of the art constitutes an affirmative defense to a design defect claim.  We emphasize that although state-of-the-art evidence may be dispositive on the facts of a particular case, such evidence does not constitute an affirmative defense that, if proven, would absolve the defendant from liability. In other words, compliance with state of the art would not, as a matter of law, warrant a judgment for a defendant.  For this reason, we believe that state-of-the-art evidence is better characterized as rebuttal evidence than as a defense.

Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 253 (1997) (internal citations and quotation marks omitted).  In short, although a "state of the art" defense is not a complete defense, evidence of compliance with the then-existing "state of the art" is relevant.

Because "state of the art" is not an affirmative defense, the Motion for Summary Judgment as to the tenth affirmative defense is granted.  However, this Ruling will not prevent GM from presenting evidence that the 2004 Suburban complied with the then-existing "state of the art."

J.   Thirteenth Affirmative Defense

Pitterman moves for summary judgment as to the thirteenth affirmative defense asserted by GM in its Complaint Answer.  See Pls.' Aff. Def. MFSJ at 1.  In the

Complaint Answer, this affirmative defense is phrased as follows: "GM LLC affirmatively alleges that the negligent or otherwise wrongful acts or omissions of Plaintiffs Rose and James O'Connor, and each of them, or other individuals and/or entities, may have constituted an intervening, superseding cause of the damages or loss, if any, allegedly sustained by Plaintiffs."  Compl. Answer at 10 ¶ 13.  However, nowhere in the Amended Complaint Answer does GM argue that Rose or James O'Connor's acts constituted an "intervening" or "superseding" cause – in fact, those words never appear in the Amended Complaint Answer.  Nevertheless, because GM addresses this affirmative defense in its briefing, the court will address it as well.

The analysis relating to this affirmative defense mirrors the analysis in connection with the tenth affirmative defense.  GM concedes that the Connecticut Supreme Court has held that an intervening or superseding cause does not constitute an affirmative defense.  See Def.'s Mem. in Opp'n at 9.  However, GM argues that, while intervening or superseding cause is not an affirmative defense, the existence of an intervening or superseding cause is relevant to the proximate cause analysis.  Id.  Thus, GM argues that the court should view this affirmative defense "as preserving GM LLC's right to fully litigate the issue of proximate cause."  Id.

Because intervening / superseding cause is not an affirmative defense, the Motion for Summary Judgment as to the thirteenth affirmative defense is granted. However, this Ruling will not bar GM from presenting evidence relating to an intervening or superseding cause, as such evidence is relevant to the proximate cause analysis.

**V.     CONCLUSION**

The Motion for Summary Judgment as to the second affirmative defense asserted in the Complaint Answer is **TERMINATED AS MOOT.**

The Motion for Summary Judgment as to the third affirmative defense asserted in the Complaint Answer is **TERMINATED AS MOOT.**

To the extent the Motion for Summary Judgment is asserted by M.R.O. and G.O. as to the fourth affirmative defense asserted in the Complaint Answer, which corresponds to the second affirmative defense asserted in the Amended Complaint Answer, it is **GRANTED**.  This affirmative defense remains as applied to plaintiff Rose O'Connor.  The ninth affirmative defense asserted in the Amended Complaint Answer, which is wholly covered by the second affirmative defense asserted in the Amended Complaint Answer, is **TERMINATED AS MOOT.**

The Motion for Summary Judgment as to the fifth affirmative defense asserted in the Complaint Answer, which corresponds to the third affirmative defense asserted in the Amended Complaint Answer, is **GRANTED IN PART AND DENIED IN PART.**  To the extent the Motion for Summary Judgment is asserted by M.R.O. as to the fifth affirmative defense, it is granted as to the allegedly contributory negligence of Rose O'Connor, but is denied as to M.R.O.'s and G.O.'s allegedly contributory negligence. To the extent the Motion for Summary Judgment is asserted by G.O. as to the fifth affirmative defense, it is granted as to the allegedly contributory negligence of Rose O'Connor, but is denied as to G.O.'s and M.R.O.'s allegedly contributory negligence. This affirmative defense remains as applied to plaintiff Rose O'Connor.

To the extent the Motion for Summary Judgment is asserted by M.R.O. and G.O. as to the sixth affirmative defense asserted in the Complaint Answer, which corresponds to the fourth affirmative defense asserted in the Amended Complaint Answer, it is **GRANTED**.  This affirmative defense remains as applied to plaintiff Rose O'Connor.

The Motion for Summary Judgment as to the seventh affirmative defense asserted in the Complaint Answer, which corresponds to the fifth affirmative defense asserted in the Amended Complaint Answer, is **GRANTED IN PART AND DENIED IN PART.**  To the extent the Motion for Summary Judgment is asserted by M.R.O. as to the fifth affirmative defense, it is granted as to the allegedly contributory negligence of Rose O'Connor, but is denied as to M.R.O.'s allegedly contributory negligence.  To the extent the Motion for Summary Judgment is asserted by G.O. as to the fifth affirmative defense, it is granted as to the allegedly contributory negligence of Rose O'Connor, but is denied as to M.R.O.'s allegedly contributory negligence.  This affirmative defense remains as applied to plaintiff Rose O'Connor.

To the extent the Motion for Summary Judgment is asserted by M.R.O. and G.O. as to the eighth affirmative defense asserted in the Complaint Answer, which corresponds to the sixth affirmative defense asserted in the Amended Complaint Answer, it is **GRANTED**.  This affirmative defense remains as applied to plaintiff Rose O'Connor.

The Motion for Summary Judgment as to the ninth affirmative defense asserted in the Complaint Answer is **TERMINATED AS MOOT.**

19

The Motion for Summary Judgment as to the tenth affirmative defense asserted in the Complaint Answer, which corresponds to the seventh affirmative defense asserted in the Amended Complaint Answer, is **GRANTED**.

The Motion for Summary Judgment as to the thirteenth affirmative defense asserted in the Complaint Answer is **GRANTED**.

The following affirmative defenses – asserted in the Amended Complaint Answer – remain: numbers 1, 2 (in part, as described above), 3 (in part, as described above), 4 (in part, as described above), 5 (in part, as described above), 6 (in part, as described above), 8, 10, 11, and 12.

**SO ORDERED**.

Dated at New Haven, Connecticut this 11th day of May 2016.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge