UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BERNARD PITTERMAN, et al., | : | CIVIL ACTION NO. |
|    Plaintiffs, | : | 3:14-CV-00967 (JCH) |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS LLC, | : | JANUARY 25, 2018 |
|    Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION TO CERTIFY QUESTIONS TO THE CONNECTICUT SUPREME COURT (DOC. NO. 313)**

**I.  INTRODUCTION**

Pending before the court is a Motion to Certify Questions to the Connecticut Supreme Court, filed by the defendant General Motors LLC ("New GM").  See Motion to Certify Questions to the Connecticut Supreme Court ("Mot. to Certify") (Doc. No. 313). New GM seeks to certify two questions:

> (1) Under what circumstances, if any, does Connecticut impose a post-sale duty to warn?
>
> (2) Does a "product seller" under the Connecticut Product Liability Act ("CPLA") include an entity that purchased certain assets and assumed certain liabilities of the product's bankrupt manufacturer, but is not a successor-in-interest of the bankrupt manufacturer and did not manufacture or sell the product at issue?

Mot. to Certify at 1.

For the reasons stated below, the Motion to Certify is **DENIED**.

**II.  BACKGROUND**

The plaintiffs, Bernard Pitterman, as administrator of the Estate of Margaret Rose O'Connor ("M.O.") and as guardian of the Estate of Grant O'Connor ("G.O."), and Rose

1

O'Connor, sued New GM under the Connecticut Product Liability Act ("CPLA").[1]  See Amended Complaint ("Am. Compl.") (Doc. No. 239).  According to the Amended Complaint, on July 13, 2011, M.O., then eight years old, climbed into her parents' 2004 Chevrolet Suburban, inserted the key into the ignition, and pulled the shift lever from Park to Neutral.  See id. at ¶¶ 6–8.  Once in Neutral, the Suburban rolled down a sloped yard and crashed into a tree, killing M.O.  See id. at ¶¶ 8, 12.

The 2004 Suburban was manufactured and sold by General Motors Corporation ("Old GM").  See id. at ¶¶ 15–17.  In June 2009, Old GM fiiled for bankruptcy, and New GM then purchased certain of Old GM's assets and liabilities.  See Memorandum in Support of Mot. to Certify ("Mem. in Supp.") (Doc. No. 313-1) at 2.  The plaintiffs alleged that the Suburban was defective when manufactured and that neither old GM nor new GM sufficiently warned of the risk of injury caused by "rollaway" incidents, such as occurred to M.O.  See Am. Compl. at ¶¶ 26–28.

At trial, the plaintiffs asserted three claims against New GM: strict liability due to design defect at the time of sale, failure to warn at the time of sale, and negligence.  See Jury Charge (Doc. No. 292) at 28.  The plaintiffs put forth two bases for the third claim of negligence: (1) that Old GM had negligently breached its post-sale duty to warn from December 12, 2007, to July 10, 2009, and that New GM was responsible for Old GM's liability; and (2) that New GM had negligently breached its post-sale duty to warn from July 10, 2009, to July 13, 2011.  See id.

---

[1] The Amended Complaint also included James O'Connor as a fourth plaintiff.  See Am. Compl.  While the case was pending, James O'Connor passed away and was not a party to the trial or judgment.

2

The plaintiffs could only prevail on either theory of negligence if Connecticut law recognizes the existence of a post-sale duty to warn. During trial, New GM argued that no such duty exists under the CPLA, but the court, interpreting state law, concluded that, "if this question were before the Connecticut Supreme Court, they would conclude there was such a theory of liability under the Connecticut Product Liability Act." Redaction of Transcript ("Tr.") (Doc. No. 242) at 162; see also id. at 158–162. The court permitted the claims to advance to the jury.

Additionally, the plaintiffs could only prevail on the second theory of negligence, occurring from July 10, 2009, to July 13, 2011, if, as a matter of law, New GM qualifies as a "product seller" within the meaning of the CPLA. See Conn. Gen. Stat. § 52-572q(a) (2017). The court acknowledged that New GM did not manufacture or sell the 2004 Chevrolet Suburban in that year and model, nor was New GM a "successor in interest" of Old GM. See Tr. at 155–57. However, the court concluded that New GM was nonetheless a product seller because "New GM continues to manufacture such products, quote unquote, within the meaning of the CPLA by virtue of its ongoing production of Chevrolet Suburbans and the use of the goodwill accruing to the GM name as well as the assumption of some obligations with respect to servicing and provision of parts for the model year in question in this case." Id. at 156. The court thus permitted the plaintiffs to advance their negligence claim on this theory to the jury. The court noted, however, that "this is a difficult question" and "a question best answered by the Connecticut Supreme Court." Id. The court declined to certify the question at that time because the issue was raised ten days before trial and trial would proceed regardless of the resolution of the issue. See id. at 156–57.

On July 19, 2017, a jury entered a verdict against New GM in an amount of $1,750,00 to Pitterman as administrator of the Estate of M.O., $250,000 to Pitterman as guardian of the Estate of G.O., and $375,000 to Rose O'Connor. See Verdict Form (Doc. No. 296) at 7–8. The jury found that New GM was not liable to plaintiffs for defective design or failure to warn at the time of sale, but was liable under both theories of negligence. See id. On August 23, 2017, New GM filed a Renewed Motion for Judgment as a Matter of Law After Trial ("Renewed Mot. for JMOL") (Doc. No. 307). New GM then filed the Motion to Certify currently pending before the court on October 12, 2017. See Mot. to Certify.

## III. LEGAL STANDARD

A federal court can certify a question of state law to be answered by the Connecticut Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d) (2017). Certification is not obligatory any time "there is a doubt as to local law and where the certification procedure is available." Lehman Bros. v. Schein, 416 U.S. 386, 390–91 (1974). Rather, certification is intended to "save time, energy, and resources and help[ ] build a cooperative judicial federalism." Id. at 391.

In determining whether to certify a question to the Connecticut Supreme Court, a federal court can consider a number of factors, some of which include "whether a state court decision has ever produced an authoritative answer, the extent to which the question implicates the weighing of policy concerns of particular importance, and if the Connecticut Supreme Court's answer may be determinative of the appeal." Corsair Special Situations Fund, L.P. v. Pesiri, 863 F.3d 176, 183 (2d Cir. 2017) (internal

4

quotation marks and citations omitted). The decision whether or not to certify a question "rests in the sound discretion of the federal court." Lehman Bros., 416 U.S. at 391.

**IV. DISCUSSION**

As stated previously, New GM has moved for certification of two questions:

(1) Under what circumstances, if any, does Connecticut impose a post-sale duty to warn?

(2) Does a "product seller" under the Connecticut Product Liability Act ("CPLA") include an entity that purchased certain assets and assumed certain liabilities of the product's bankrupt manufacturer, but is not a successor-in-interest of the bankrupt manufacturer and did not manufacture or sell the product at issue?

Mot. to Certify at 1.

A. Post-Sale Duty to Warn

New GM first argues that this court should certify the question of whether Connecticut law recognizes a post-sale duty to warn. See Mem. in Supp. at 5–13. New GM argues that the law is unsettled because no Connecticut appellate court has answered the question. See id. at 6. New GM acknowledges that the Second Circuit in Densberger v. United Technologies Corp., 297 F.3d 66 (2d Cir. 2002), recognized such a duty, but argues that the Second Circuit rendered an incorrect interpretation of state law. See id. at 5–6; Densberger, 297 F.3d at 71 ("It follows that the post-sale duty to warn exists in negligence, and is cognizable under the CPLA."). New GM contends that (1) Densberger mistakenly relied on two Connecticut Supreme Court cases[2] that

---

[2] See Prokolkin v. General Motors Corp., 170 Conn. 289 (1976); Handler v. Remington Arms Co., 144 Conn. 316 (1957).

5

address a continuing duty to warn rather than a post-sale duty to warn, (2) Densberger conflicts with the CPLA and Connecticut common law, and (3) Densberger is undermined by a subsequent Connecticut Supreme Court decision in Bifolck v. Phillip Morris, Inc., 324 Conn. 402 (2016). See Mem. in Supp. at 6–13.

In response, the plaintiffs do not disagree that there is no appellate state court decision addressing this question, but argue that certification is unnecessary because the court was correct to follow Densberger. See Memorandum in Opposition to Defendant's Mot. to Certify ("Mem. in Opp.") (Doc. No. 315) at 2–8. The plaintiffs argue that the Second Circuit in Densberger relied on the language of the CPLA, not just on the two Connecticut Supreme Court cases identified by New GM. See id. at 4–5. Additionally, the plaintiffs argue that Bifolck did not undermine Densberger because Bifolck does not address claims for failure to warn. See id. at 6–7.

"A federal court faced with a question of unsettled state law must do its best to guess how the state court of last resort would decide the issue." In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 850 (2d Cir. 1992). In doing so, a federal court is not bound by lower state court decisions, by they carry "great weight in informing the court's prediction on how the highest court of the state would resolve the question." Id.

Many district courts, including a number within this Circuit, further recognize the predictions of their respective Courts of Appeals on state law as binding. See, e.g., Musah v. Houslanger & Assocs., PLLC, No. 12 CIV. 3207, 2012 WL 5835293, at *3 (S.D.N.Y. Nov. 16, 2012) ("[A]bsent a contrary holding by the New York Court of Appeals, the Second Circuit's holding . . . is binding authority on the issue for federal district courts within the Circuit."); Kojak v. Jenkins, No. 98 CIV. 4412 (RPP), 1999 WL

6

244098, at *7 (S.D.N.Y. Apr. 26, 1999) ("Nevertheless, as a federal district court, this Court must follow the clear precedents of the U.S. Court of Appeals for the Second Circuit; determinations of this Court with respect to state law in diversity actions, after all, will be reviewed de novo by the U.S. Court of Appeals."); see also Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1077 (7th Cir. 2004) (holding that, while the circuit court was not bound to its interpretation of state law after the state supreme court opined to the contrary, the district court was bound by the circuit's prior ruling).[3]

However, some district courts, again including some within this Circuit, disagree and do not recognize the Circuit's state law predictions as binding authority in all circumstances. See, e.g., In re N.Y. Asbestos Litig., 847 F. Supp. 1086, 1111 (S.D.N.Y. 1994); In re E. & S. Districts Asbestos Litig., 772 F. Supp. 1380, 1391 (E.D.N.Y. 1991), aff'd in part, rev'd in part sub nom. In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831 (2d Cir. 1992). "Where a conflict exists between holdings of the Second Circuit and more recent determinations of state appellate courts, this court will follow the outcome it believes the New York Court of Appeals would reach, without giving binding authority to the Second Circuit's construction of the state statute. The federal Court of Appeals is in the same position as a lower state court vis-à-vis the New York Court of Appeals in

---

[3] One law review article reviewed district court cases addressing the state law predictions of their respective Courts of Appeals and concluded:

> One might instinctively surmise that entrenched principles of stare decisis compel district courts to follow the relevant court of appeals' Erie predictions. And indeed, the state of the law throughout the country generally reflects this.

Colin E. Wrabley, Applying Federal Courts of Appeals' Precedent: Contrasting Approaches to Applying Court of Appeals' Federal Law Holdings and Erie State Law Predictions, 3 Seton Hall Cir. Rev. 1, 11 (2006) (collecting cases).

7

construing state substantive law under Erie." 772 F. Supp. at 1391 (emphasis added). In each of these cases, unlike the one before this court, the lower court had not only a Court of Appeals ruling, but also subsequent rulings by the state appellate court.

The court agrees with the first line of cases and recognizes Second Circuit precedent on state law to be binding on this court absent a contrary state statute or holding of the state's highest court. Thus, the court is bound by Densberger, and certification of the question is unnecessary.[4] Neither the district court nor the Court of Appeals in Densberger found it necessary to certify the question in that case. Furthermore, a number of the cases that declined to give the relevant Circuit precedent binding authority often addressed circumstances in which there was a conflict between the holdings of the federal Court of Appeals and state appellate courts. See, e.g., In re N.Y. Asbestos Litig., 847 F. Supp. at 1111; In re E. & S. Districts Asbestos Litig., 772 F. Supp. at 1391. No such conflict exists in this case, as both parties acknowledge that no state appellate court decision has addressed this question.

Additionally, the court is not persuaded by New GM's arguments that Densberger should not be followed because it is contrary to the CPLA and to the Connecticut Supreme Court's holding in Bifolck. New GM argues that the CPLA contains a duty to warn and discusses that duty only at the time of manufacture. See Mem. in Supp. at 10–11. The Densberger court considered that language but held that it only applied to duty to warn claims under strict product liability, not negligence in failure to warn. See

---

[4] Because it would be inappropriate for the court to reevaluate the Second Circuit's determination of the law, which is binding on this court, the court need not address New GM's arguments that Densberger misinterpreted Connecticut Supreme Court precedent in Prokolkin v. General Motors Corp., 170 Conn. 289 (1976), and Handler v. Remington Arms Co., 144 Conn. 316 (1957). That argument is properly laid before the Court of Appeals.

8

Densberger, 297 F.3d at 71. Densberger held that "the CPLA does not preempt all common law theories of product liability," but rather "incorporate[s them] into the statute unless they are expressly inconsistent with it." Id. at 70. This court follows the Second Circuit's interpretation of the CPLA, and therefore, Densberger is not contrary to the statute, but rather a binding interpretation of the statute.

Nor does Bifolck prevent this court from following the Second Circuit's precedent in Densberger. In Bifolck, the federal court certified to the Connecticut Supreme Court three questions, including whether all product liability theories, including claims of negligence, are subject to a single unitary definition. See Bifolck, 324 Conn. at 407. The Bifolck court held that "all product liability claims require proof of a 'defective condition unreasonably dangerous' to the user or consumer," but that "unreasonably dangerous is not determined by consumer expectations under comment (i) to § 402A when such a claim may be brought under a theory of negligence." Id. at 408.

This court recognizes that, were Bifolck's holding on point for the question currently before the court, the court would be bound to follow Biffolck rather than Densberger because issues of state law are governed by the state court of last resort. See In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d at 850. However, Bifolck does not address the question before the court as to whether a post-sale duty to warn exists. New GM acknowledges as much because it argues that the law is unsettled and there is no state appellate authority on the question.[5] See Mot. to Certify at 1. First, the underlying facts in Bifolck involved an alleged design defect in cigarettes that increased

---

[5] This court notes that, if Bifolck were on point, it would likewise be required to deny the Motion to Certify because there would already be a controlling state decision. See Conn. Gen. Stat. § 51-199b(d).

9

the consumers' risk of cancer. See id. at 406. None of the facts addressed a failure to warn, either at the time of sale or post-sale.

Second, the focus of the holding concerns whether the "unreasonably dangerous" requirement applies to both strict liability and negligence theories of liability and which test determines whether a product is "unreasonably dangerous" in the context of a design defect. See id. at 438–44. New GM argues that, because the time for assessing warnings is at the time of manufacture, Bifolck should be read to require the defect, including an unreasonably dangerous condition, to exist at the time of sale. See Mem. in Supp. at 13. The Bifolck holding, however, does not specifically discuss the time at which a defect must exist because that is not part of the question at issue in the case.

The court does acknowledge that Bifolck contains dicta that undermines some of the reasoning employed in Densberger. For instance, the Bifolck court states:

> All such claims, whether alleging a design defect, a manufacturing defect or failure to warn defect, are governed by the same elements that this court has applied since it adopted § 402A: (1) the defendant was engaged in a business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of sale; and (5) the product was expected to and did reach the consumer without substantial change in condition.

Bifolck, 324 Conn. at 434 (internal quotation marks and citation omitted). The court recognizes that this language undermines the Densberger court's distinction between strict liability and negligence claims and further contains language requiring a defect to exist at the time of the sale. However, the court considers this language to be dicta and, on its own, insufficient to rely on to ignore the Second Circuit's precedent in

10

Densberger. Moreover, the Bifolck court itself continues to recognize distinctions between strict liability and negligence claims by applying different tests for the unreasonably dangerous requirement to each theory. See id. at 408.

If the Second Circuit, based on language in Bifolck, overrules Densberger and concludes that no post-sale duty to warn exists, this court is bound to follow such a ruling, but until it does so, it is not the province of this court to disregard Second Circuit authority without clearer direction in a holding of the Connecticut Supreme Court. Cf. Taco Bell, 388 F.3d at 1077 (noting that, when the Seventh Circuit's precedent was "no longer a reliable prediction of how the Supreme Court of Illinois would rule if the issue were presented to it" due to subsequent state decisions undermining the earlier Seventh Circuit decision, "the district court was bound by [the Seventh Circuit precedent], as a lower court cannot overrule the decision of a higher one," but the Seventh Circuit was not bound by its own earlier decision). Accordingly, as Densberger remains binding, the court considers certification of the question unnecessary.

Furthermore, even if the Bifolck language quoted above can be considered to be the Connecticut Supreme Court's holding, rather than merely dicta, such language would not alter the outcome in this case. Although the jury found GM not liable for failure to warn at the time of the sale, it did so because it found that the plaintiffs had failed to prove causation. See Verdict Form at 3. The jury nonetheless found that the plaintiffs had proven that "the 2004 Suburban was in a defective condition, because it failed to provide necessary and adequate warnings or instructions at the time of its initial sale." Id. Therefore, even if Bifolck requires a defect to exist at the time of the sale, the

plaintiffs have satisfied that requirement in this case. As such, even if the question were to be certified, this case is not a good candidate for certification of this question.

In conclusion, because this court is bound by the precedent of the Second Circuit in Densberger, it would be unnecessary and an imprudent use of judicial resources to certify the question. Accordingly, New GM's Motion is denied as to the first question.

B.      Definition of Product Seller

New GM also requests the court to certify to the Connecticut Supreme Court the question of whether it qualifies as a product seller. See Mem. in Supp. at 14–17. New GM argues that no state appellate court has decided the question and that the law is thus unsettled. See id. at 14. New GM then presents several arguments as to why it should not be considered a product seller. See id. at 14–17. The plaintiffs oppose the Motion by citing to a case from this District in which the court determined that Mercedes-Benz was a product seller under the CPLA without certifying the question. See Mem. in Opp. at 13 (citing Svege v. Mercedes-Benz Credit Corp., 329 F. Supp. 2d 272, 278 (D. Conn. 2004)).

The court notes that its role, in ruling on the Motion to Certify currently before it, is not to relitigate the merits of the issue, but to determine whether the question is appropriate for certification.[6] In doing so, the court recognizes that the question is unsettled and difficult, but concludes that certification of the question is not appropriate in this case because it would not be determinative of the appeal. See Corsair Special Situations Fund, 863 F.3d at 183.

---

[6] New GM has filed a Renewed Motion for Judgment as a Matter of Law, and re-arguments on the merits of whether New GM qualifies as a product seller are more appropriately considered in resolution of that Motion than the present Motion to Certify.

12

In this case, the plaintiffs prevailed on both theories of negligence, based on Old GM's conduct from December 12, 2007, to July 10, 2009, and based on New GM's conduct from July 10, 2009, to July 13, 2011. See Verdict Form at 4–5. The plaintiffs only needed to prove a breach of duty for one of the time periods in order to prevail on their negligence claim, however. See Jury Charge at 41. As the injury caused by both breaches is the same, the damages for the two theories of negligence overlap coextensively, so no damages were awarded for breach under the second theory that would not have been awarded for breach under the first. This is reflected in the Verdict Form, which directs the jury to determine an amount of damages for each plaintiff if it found liability under any of the claims, including either theory of negligence, and does not require the jury to distinguish between the claims for the purpose of damages. See Verdict Form at 7–8.

The issue of whether New GM qualifies as a product seller or not, however, is only relevant to the second basis for the plaintiffs' negligence claim. See Tr. at 154 (stating that "clearly Old GM qualifies as a product seller under the statute," which establishes the basis for liability under the first theory of negligence). Therefore, even if the court certified the question and the Connecticut Supreme Court concluded that the definition of product seller does not include entities like New GM, New GM would nonetheless remain liable to the plaintiffs for the same amount of damages based on the first basis for negligence.

The court continues to recognize, as it stated earlier during trial, that the question of whether New GM qualifies as a product seller is a difficult one best answered by the Connecticut Supreme Court. See Tr. at 156. However, because the question is not

13

determinative of the outcome of New GM's Renewed Motion for Judgment as a Matter of Law, this case is not a good candidate for certification of the question. Granting the Motion to Certify here would not be in keeping with the purposes of certification, as it would not save the time, energy, or resources of this court or the Connecticut Supreme Court. The question is more appropriately resolved by the Connecticut Supreme Court in a case in which the answer would affect the outcome of the case, rather than merely serve as a clarification of the law for academic purposes, as it would here.

Accordingly, in the exercise of its sound discretion, the court denies the Motion to Certify on the second question.[7] Additionally, because the court has denied the Motion on these grounds, it need not address the plaintiffs' additional arguments about the timeliness and formatting of the questions sought to be certified. See Mem. in Opp. at 1–2, 13–15; Reply in Support of Defendant's Mot. to Certify (Doc. No. 316).

## V. CONCLUSION

For the reasons stated above, the Motion to Certify is **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 25th day of January, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[7] Of course, if the Court of Appeals were to conclude that the first basis for liability, see supra page 13, is set aside on appeal, it can then consider whether certification of this question is appropriate.