UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BERNARD PITTERMAN, et al., | : | CIVIL ACTION NO. |
|     Plaintiffs, | : | 3:14-CV-00967 (JCH) |
| v. | : | |
| GENERAL MOTORS LLC, | : | DECEMBER 7, 2018 |
|     Defendant. | : | |

**RULING RE: JOINT MOTION FOR AN INDICATIVE RULING (DOC. NO. 348)**

**I.    INTRODUCTION**

Pending before the court is the parties' Joint Motion for an Indicative Ruling ("Mot.") (Doc. No. 348). In their Motion, the parties represent that they have reached a conditional settlement contingent upon this court vacating the judgment, verdict, and rulings that are currently on appeal before the Second Circuit. See Memorandum in Support of Joint Motion for Indicative Ruling to Effect Terms of Settlement ("Mem.") (Doc. No. 348-1) at 2. Pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, the parties seek an indicative ruling from this court stating that the court would grant a motion to vacate if the Second Circuit remanded for that purpose. See id. at 4.

For the reasons discussed below, the parties' Joint Motion for an Indicative Ruling (Doc. No. 348) is granted.

**II.    BACKGROUND**

Plaintiffs Bernard Pitterman and Rose O'Connor (collectively, "the plaintiffs") sued defendant General Motors LLC ("General Motors") under the Connecticut Product Liability Act ("CPLA"). See generally Amended Complaint ("Am. Compl.") (Doc. No. 239). The case proceeded to a jury trial and, on July 19, 2017, the jury entered a verdict against General Motors in favor of the plaintiffs. See Jury Verdict (Doc. No.

1

296–1) at 7–8. On August 23, 2017, General Motors filed a Renewed Motion for Judgment as a Matter of Law After Trial (Doc. No. 307). General Motors also filed a Motion to Certify Questions to the Connecticut Supreme Court (Doc. No. 313) on October 12, 2017, requesting certification on two of questions concerning Connecticut products liability law. The court denied both Motions. See generally Amended Ruling on Defendant's Motion to Certify Questions to the Connecticut Supreme Court (Doc. No. 318); Ruling on Defendant's Renewed Motion for Judgment as a Matter of Law After Trial (Doc. No. 321).

On May 17, 2018, General Motors filed a Notice of Appeal with the Second Circuit (Doc. No. 329). According to the parties' representations in their Memorandum in Support of the Joint Motion for an Indicative Ruling, the Second Circuit ordered the parties to participate in the court's Civil Appeals Mediation Program. See Mem. at 2. The parties further represent that they have now reached a conditional agreement that would moot the pending appeal, including a financial settlement that is satisfactory to the plaintiffs. See id. The conditional agreement, however, is contingent on this court vacating the judgment, verdict, and rulings that are currently on appeal. See Mot. at 1. At the parties' request, the Second Circuit has held the appeal in abeyance to allow the parties to seek an indicative ruling from this court on the issue of vacatur. See generally Order of the United States Court of Appeals for the Second Circuit (Doc. No. 347).

### III. STANDARD OF REVIEW

It is well settled that "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Negron v. United States, 394 F. App'x 788, 792 (2d Cir. 2010) (quoting Griggs v. Provident Consumer

296–1) at 7–8. On August 23, 2017, General Motors filed a Renewed Motion for Judgment as a Matter of Law After Trial (Doc. No. 307). General Motors also filed a Motion to Certify Questions to the Connecticut Supreme Court (Doc. No. 313) on October 12, 2017, requesting certification on two of questions concerning Connecticut products liability law. The court denied both Motions. See generally Amended Ruling on Defendant's Motion to Certify Questions to the Connecticut Supreme Court (Doc. No. 318); Ruling on Defendant's Renewed Motion for Judgment as a Matter of Law After Trial (Doc. No. 321).

On May 17, 2018, General Motors filed a Notice of Appeal with the Second Circuit (Doc. No. 329). According to the parties' representations in their Memorandum in Support of the Joint Motion for an Indicative Ruling, the Second Circuit ordered the parties to participate in the court's Civil Appeals Mediation Program. See Mem. at 2. The parties further represent that they have now reached a conditional agreement that would moot the pending appeal, including a financial settlement that is satisfactory to the plaintiffs. See id. The conditional agreement, however, is contingent on this court vacating the judgment, verdict, and rulings that are currently on appeal. See Mot. at 1. At the parties' request, the Second Circuit has held the appeal in abeyance to allow the parties to seek an indicative ruling from this court on the issue of vacatur. See generally Order of the United States Court of Appeals for the Second Circuit (Doc. No. 347).

### III. STANDARD OF REVIEW

It is well settled that "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Negron v. United States, 394 F. App'x 788, 792 (2d Cir. 2010) (quoting Griggs v. Provident Consumer

Discount Co., 459 U.S. 56, 58 (1982)).  However, Federal Rule of Civil Procedure 62.1 is "a procedural device that allows a district court to inform the parties and [the circuit court] how it would rule on the merits of certain motions after an appeal has been filed and the district court has been divested of jurisdiction."  LFoundry Rousset, SAS v. Atmel Corp., 690 F. App'x 748, 750 (2d Cir. 2017).  Specifically, when parties file a motion pursuant to Rule 62.1, including motions to vacate, district courts are authorized to issue so-called "indicative rulings."  Fed. R. Civ. P. 62.1 Advisory Committee Notes; see also Darnell v. Pineiro, 849 F.3d 17, 28 n.7 (2d Cir. 2017) ("Rule 62.1 of the Federal Rules of Civil Procedure permits district courts to issue indicative rulings to appellate courts when a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending.") (internal quotation marks omitted).  In an indicative ruling, "the court may (1) defer considering the motion; (2) deny the motion; or (3) state that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1(a).

## IV. DISCUSSION

The parties argue that the exceptional circumstances of this case warrant vacatur.  See Mem. at 4.  In particular, they note that (1) the Second Circuit initiated the negotiations that eventually led to the parties' settlement; (2) both parties desire vacatur; (3) vacatur is a necessary condition of the settlement agreement; and (4) the only damage to the public interest from the proposed vacatur is depriving the public of the precedential effect of this court's decisions.  See id. at 7.

Pursuant to Federal Rule of Civil Procedure 60(b), the court has the power to vacate a final judgment, order, or proceeding for, inter alia, "any [ ] reason that justifies

3

relief." That said, when a voluntary settlement reached by the parties moots an appeal, vacatur of the underlying judgment is ordinarily not available. See Major League Baseball Properties, Inc. v. Pac. Trading Cards, Inc., 150 F.3d 149, 151 (2d Cir. 1998). Mootness by reason of settlement does not, by itself, justify vacatur in light of several opposing considerations, namely: (1) that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole"; (2) that allowing parties to employ vacatur as a collateral attack on a judgment would "disturb the orderly operation of the federal judicial system"; and (3) that when a case is settled, "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 25–27 (1994); see also Microsoft Corp. v. Bristol Tech., Inc., 250 F.3d 152, 154 (2d Cir. 2001). Thus, because "denying vacatur after settlement advances the public interest in preserving judicial precedent and the proper course of appellate procedure," ATSI Commc'ns, Inc. v. Shaar Fund, Ltd, 547 F.3d 109, 112 (2d Cir. 2008), the Second Circuit has cautioned that vacatur is "an extraordinary remedy to be granted only in exceptional circumstances." Microsoft, 250 F.3d at 154 (internal quotation marks omitted).

The Second Circuit has declined to define what circumstances should be considered "exceptional." See id. at 154 ("Without undertaking to say what is 'exceptional' under Bancorp and what is not, we have granted vacatur on several occasions."); Zomber v. Stolz, No. CV 09-4637 ETB, 2012 WL 1427775, at *3 (E.D.N.Y. Apr. 25, 2012) ("[T]he Second Circuit has declined to define what circumstances are considered 'exceptional' to warrant vacating a final judgment[.]"). However, it has

4

highlighted several considerations that weigh in favor of vacatur.  To begin, the Second Circuit has indicated that the public interest in preserving judicial precedent is "less compelling when, as here, the judgment to be vacated is one of a federal district court" because "[d]istrict court decisions, unlike the decisions of States' highest courts and federal courts of appeals, are not precedential in the technical sense[.]"  ATSI Communications, 547 F.3d at 112 (internal quotation marks omitted).[1]  The public interest in preserving a district court opinion is further diminished when its "chief precedential value" is its interpretation of state law.  Microsoft, 250 F.3d at 155.  In Microsoft v. Bristol Technology, for example, the Second Circuit vacated this court's "interpretive opinion" of the Connecticut Unfair Trade Practices Act ("CUPTA"), explaining that the opinion was "perhaps dispensable" because "CUPTA is a state statute" and "one can expect that its import will be developed by Connecticut state courts[.]"  Id.

The Second Circuit has also been more amenable to vacatur when "the court and appellee, not the appellant, initiated consideration of settlement," and when "all the parties had a significant interest in vacating the district court's opinion."  Major League Baseball Properties, 150 F.3d at 152.  In Major League Baseball Properties v. Pacific Trading Cards, for example, the Second Circuit vacated the district court's rulings in a trademark dispute where the parties settled after the Second Circuit had encouraged the parties to engage in negotiations.  See id. at 151.  Because the court would have preliminarily enjoined the appellee from selling certain merchandise unless the appellee

---

[1] In ATSI Communications, the Second Circuit denied the parties' joint motion to vacate.  ATSI Commc'ns, 547 F.3d at 115.  This court notes that the vacatur at issue in ATSI Communications concerned federal substantive law and conduct by members of the federal bar.  Id. at 110.

5

posted a bond sufficient to secure the appellant's infringement claims, the appellee in that case "strongly desired" a settlement to avoid the burdensome financial consequences of an appeal. Id. at 150, 152. The appellant, however, would not settle without vacatur because it was concerned about "the effect of the district court's decision in future litigation with alleged infringers." Id. at 152. The Second Circuit concluded that these facts satisfied the exceptional circumstances test because not only was vacatur "a necessary condition to settlement," but the only damage to the public interest from such a vacatur was the loss of judicial precedence. Id.

    Here, the facts also justify the exceptional remedy of vacatur. As in Microsoft, the plaintiffs' causes of action in this case arise entirely under state law, namely, the Connecticut Product Liability Act ("CPLA"). The precedential value of this court's decisions is therefore diminished, if not dispensable, because it is expected that Connecticut state courts will develop CPLA law. See Microsoft, 250 F.3d at 155. Furthermore, this case is analogous to Major League Baseball Properties in that the Second Circuit first suggested, and later facilitated, settlement negotiations between the parties. See Mem. at 2; Major League Baseball Properties, 150 F.3d at 151, 152. The Circuit's involvement in these settlement negotiations lessens the concern that the parties are using vacatur to exercise "undue control over judicial precedents." Motta v. Dist. Dir. of I.N.S., 61 F.3d 117, 118 (1st Cir. 1995). In addition, there is no evidence to suggest that vacatur in this case would adversely impact nonparties to the litigation. Instead, the only damage to the public interest from such a vacatur appears to be the loss of judicial precedence. See Major League Baseball Properties, 150 F.3d at 152 (noting that the "only damage to the public interest from such a vacatur would be that

6

the validity of MLB's marks would be left to future litigation"); BMC, LLC v. Verlan Fire Ins. Co., No. 04-CV-0105A (SC), 2008 WL 2858737, at *2 (W.D.N.Y. July 22, 2008) (noting in support of vacatur that "no nonparties would be impacted by vacatur").

In making this indicative ruling, the court acknowledges that the parties' interests in vacatur appear to be less compelling in this case than in Major League Baseball Properties. Neither party in this lawsuit represents that they face difficult or "financially ruinous" consequences from an appeal. See Major League Baseball Properties, 150 F.3d at 150, 151. Furthermore, General Motors has not explained how this court's decisions make it vulnerable to future litigation, beyond noting that it "may face these same issues in the future, and could be bound by this Court's rulings if it does not appeal them here[.]" Mem. at 2. Nor is it apparent to the court that the litigation risks faced by General Motors are comparable to those faced by the appellant in Major League Baseball Properties, as the appellant in that case was required under trademark law to either "defend its mark against all users or be subject to the defense of acquiescence." Major League Baseball Properties, 150 F.3d at 152.

On the other hand, however, the court recognizes that both General Motors and the plaintiffs have a strong interest in bringing this case to a close. The lawsuit, which arises out of the tragic death of one of the plaintiff's children, has been actively litigated for more than four years, and district courts in this Circuit have generally been more receptive to vacatur where, as here, "vacatur would bring an end to the tortured history of a litigation, opening a door to settlement by relieving some party from having to fight an undesirable ruling on appeal." Barry v. Atkinson, 193 F.R.D. 197, 200 (S.D.N.Y.2000).

7

Taken together, the aforementioned circumstances are sufficiently exceptional to warrant vacatur. Accordingly, the court states in this Indicative Ruling that it would grant a motion by the parties to vacate the judgment, verdict, and rulings that are currently on appeal, provided that the Second Circuit remanded the case for such a purpose.

## V. CONCLUSION

For the foregoing reasons, the parties' Joint Motion for an Indicative Ruling ("Mot.") (Doc. No. 348) is **GRANTED**. The court indicates that it would grant a motion to vacate if the Second Circuit remanded for that purpose.

**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of December, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge